# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| CRAIG CUNNINGHAM, on behalf of himself and others similarly situated, | CIVIL ACTION FILE NO. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| VANDERBILT UNIVERSITY, VANDERBILT UNIVERSITY MEDICAL CENTER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## Preliminary Statement

1. Plaintiff Craig Cunningham ("Plaintiff" or "Mr. Cunningham") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Mr. Cunningham alleges that Vanderbilt University ("Vanderbilt") engaged in a wide-spread calling campaign by making automated calls to his and other class members' cellular telephones for the purpose of soliciting donations without their prior express consent in violation of the TCPA.

3. Mr. Cunningham further alleges that Vanderbilt University Medical Center similarly made automated calls to his and other class members' cellular telephones for the

purpose of soliciting their participation in clinical trials without their prior express consent in violation of the TCPA.

4. Remarkably, Defendants made these calls to Mr. Cunningham even though he has previously brought a lawsuit against Vanderbilt the *for the same conduct*.

5. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal calling campaign and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Craig Cunningham is a resident of Texas, who formerly resided in Tennessee.

7. Defendant Vanderbilt University is a private educational institution in this District.

8. Defendant Vanderbilt University Medical Center is a private health treatment facility in this District.

**Jurisdiction & Venue**

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. The Court has personal jurisdiction over Defendants because they operate in this District and attempted to solicit the Plaintiff and proposed class members with robocalls that originated in this District and or decisions to place such robocalls originated in this District.

11.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the automated calls that were made to Plaintiff from this District. Furthermore, all Defendants are residents of this District.

## TCPA Background

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service or to a number that is charged per call. *See* 47 U.S.C. § 227(b)(1)(A). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

17. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

18. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-

4

consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

19. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

20. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

**Factual Allegations**

Calls to Mr. Cunningham from Vanderbilt University

21. Plaintiff Cunningham is a "person" as defined by 47 U.S.C. § 153(39).

22. Plaintiff has previously brought a lawsuit against both Defendants for making automated calls to his cellular telephone number without his permission.

23. Plaintiff's prior lawsuit against Defendants resolved in 2017.

24. Despite that resolution, Plaintiff has continued to receive more automated calls from Defendants.

5

25. Mr. Cunningham's telephone number, (XXX) XXX-7262, is assigned to a cellular telephone service.

26. Plaintiff received a call from Vanderbilt University at this number on August 24, 2019.

27. The call was made with a Caller ID of (615) 875-5356.

28. This call was made with an ATDS, as that term is defined by the TCPA.

29. Additionally, for the August call to Plaintiff's phone number ending in "7262," there was approximately 16 seconds of dead air before it sounded like the call connected for a few seconds of ambient background noise and then the remainder of the call was 45 seconds of dead air left on a voicemail for Plaintiff's cell phone.

30. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

31. When the call connected with Plaintiff's voicemail, there was "dead air" on the other end of the call with no human being there.

32. When Plaintiff called the number back, the agent who answered identified him/herself as working for Vanderbilt to solicit donations.

33. Plaintiff has never given his prior express consent to Vanderbilt University to contact him on his cell phone.

34. Mr. Cunningham has no association with Vanderbilt University other than his prior lawsuit against it for similar unsolicited automated calls.

Calls to Mr. Cunningham from Vanderbilt University Medical Center

35. Mr. Cunningham has another telephone number, (XXX) XXX-1977, that is assigned to a cellular telephone service.

36. Mr. Cunningham keeps a second cellular telephone for several reasons. A few of those are:

    a. While driving in his car, Mr. Cunningham uses one phone for navigation and allows the other to be idle if he needs to take or make a phone call.

    b. Mr. Cunningham travels outside of the United States several times per year and only one of his two cellular telephones has an international calling plan.

    c. Mr. Cunningham will also field calls for his business on his cellular phones.

    d. Mr. Cunningham has also had periodic problems or repairs with one phone and having a second phone allows him to continue to make calls, respond to emails, text messages, and communicate with friends and family.

37. Plaintiff received a call from Vanderbilt Medical Center on February 5, 2018.

38. The Caller ID for that call was (615) 875-0043.

39. This call was too made with an ATDS, as that term is defined by the TCPA.

40. Plaintiff knew that it was made with an ATDS because right before the call connected there was a distinctive pause of approximately 16 seconds of dead air, which is associated with a predictive dialing system.

41. Plaintiff has never given his prior express consent to Vanderbilt University Medical Center to contact him on his cell phone.

42. Additionally, Vanderbilt University, which obviously has ties to Vanderbilt University Medical Center in leadership, name, and business collaborations, has previously admitted to using an ATDS in a prior lawsuit when placing solicitation calls to consumers.

43. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

44. When Plaintiff answered, there was "dead air" on the other end of the call with no human being there to speak with.

45. When Plaintiff called the number back, a live person came on the line and stated that they were calling on behalf of the clinical trials department with Vanderbilt Medical Center.

46. Plaintiff received another similar call on September 21, 2018.

47. Annoyed by these nuisance calls, Plaintiff alerted counsel for Vanderbilt from the prior lawsuit about the calls, yet the calls still continued.

48. On July 31, 2018 Plaintiff received yet another call from Vanderbilt Medical Center with 16 seconds of dead air before the call hung up.

49. The Caller ID for that call was (615) 875-0554.

50. This call was made with an ATDS, as that term is defined by the TCPA.

51. Plaintiff knew that it was made with an ATDS because right before the call connected there was a distinctive lengthy pause of dead air, which is associated with a predictive dialing system.

52. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

53. When Plaintiff answered, there was "dead air" on the other end of the call with no human being there.

54. In fact, on this call no human being ever came on the other end of the phone line.

55. The dialer used by both Vanderbilt University and Vanderbilt University Medical Center had the following capabilities:

    a. The capacity to store telephone numbers in a database and dial them automatically with no human intervention.

    b. Loading a list of telephone numbers into the dialing system and pressing a single command does this.

    c. On information and belief, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

    d. The dialing system can do this by inputting a straightforward computer command.

    e. Following that command, the dialing system will sequentially dial numbers.

    f. First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

    g. This would be done without any human intervention or further effort.

56. Plaintiff believes he has received other calls from Vanderbilt University and from Vanderbilt University Medical Center and that such information would be in the possession of the Defendants.

57. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the calls, and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class. The calls further injured Plaintiff and the proposed class members because took up memory on Plaintiff's and class members' cell phones.

## Class Action Allegations

58. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

59. The Class of persons Plaintiff proposes to represent is tentatively defined as:

All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls for which Defendants did not have prior express consent; (b) to their cellular telephone numbers; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

60. Excluded from the Class are counsel, Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

61. The Class as defined above is identifiable through phone records and phone number databases in Defendants' possession.

62. The potential Class's members number at least in the thousands. Individual joinder of these persons is impracticable.

63. Plaintiff is a member of the Class.

64. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated calls to contact putative class members' cellular telephones;

    b. Whether Defendants' agent(s) initiated calls without obtaining the recipients' consent for the calls;

    c. Whether Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

65. Plaintiff's claims are typical of the claims of class members.

66. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

67. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

68. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

11

Case 3:19-cv-00788   Document 1   Filed 09/06/19   Page 11 of 14 PageID #: 11

69. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## CAUSES OF ACTION

### FIRST COUNT

### STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

65. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-69

66. Section 227(b)(1)(A)(iii) of the TCPA sets forth restrictions on the use of automated telephone equipment, and provides in pertinent part:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

*****

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

67. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

68. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500.00 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

69. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future.

## TRIAL BY JURY

70. Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendants:

A. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future; including enjoining Defendants from continuing to place calls to Plaintiff's cellular telephone number, and from continuing to place calls to the cellular telephone numbers of members of the proposed Class without prior express consent;

B. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages for each and every violation of the TCPA;

C. An award of attorneys' fees and costs to counsel for Plaintiff and the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclass(es) the Court deems appropriate, finding that Plaintiff is a proper representative of the Class and any Subclass(es), and

appointing the lawyers and law firms representing Plaintiff as counsel for the Class and any Subclass(es);

E. Such other relief as the Court deems just and proper.

Dated: September 6, 2019

Respectfully Submitted for Plaintiff,

**GREG COLEMAN LAW PC**

*/s/ Gregory F. Coleman*

Gregory F. Coleman (TN BRP #14092)
Lisa A. White (TN BPR #026658)
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com

Gary M. Klinger (*pro hac vice forthcoming*)
**Kozonis & Klinger, Ltd.**
4849 N. Milwaukee Avenue, Suite 300
Chicago, Illinois 60630
Tel: (312) 283-3814
Email: gklinger@kozonislaw.com

Anthony I. Paronich (*pro hac vice forthcoming*)
**Paronich Law, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com